IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHELLE PEEL STEPHENSON, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:18-cv-137-GMB |
|  | ) [WO] |
| NEW HAMPSHIRE INSURANCE COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Partial Motion to Dismiss filed by Defendant New Hampshire Insurance Company ("NHIC"). Doc. 39. Plaintiff Michelle Stephenson asserts claims for underinsured motorist ("UIM") benefits, breach of contract, and wrongful death[1] relating to a motor vehicle accident involving her husband, Gerald W. Stephenson, who is deceased. Docs. 1 & 22. NHIC has moved to dismiss the breach of contract claim for lack of subject matter jurisdiction. Doc. 39 at 1. After careful consideration of the parties' filings and the relevant law, and for the reasons stated below, the court concludes that the Partial Motion to Dismiss (Doc. 39) is due to be GRANTED.

### I. JURISDICTION AND VENUE

The court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction, nor do they contest that venue is proper in the Middle District of Alabama. The court finds adequate allegations to support

---

[1] Plaintiff also brought a claim for excess UIM benefits against National Union Fire Insurance Company of Pittsburgh, Pennsylvania, but that claim and defendant have now been dismissed. Docs. 22 & 36.

both jurisdiction and venue.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The following is a recitation of the facts as alleged in the complaint and amendment to complaint.  On February 24, 2017, Gerald Stephenson was driving southbound on County Road 49 in Geneva County near a four-way stop. Doc. 1 at 2.  At the same time, Donald Harry Rhein was driving eastbound at an unlawful speed. Doc. 1 at 2.  Rhein failed to halt at the stop sign and collided with Stephenson's vehicle, causing Stephenson's vehicle to be struck by another vehicle driven by Lindsay Sparks. Doc. 1 at 2.  All three vehicles caught on fire. Doc. 1 at 2.  The collision seriously injured Stephenson and he ultimately died as a result of his injuries. Doc. 1 at 2.

At the time of the collision, Gerald Stephenson was employed by GroSouth, Inc. ("GroSouth"), a company located in Montgomery, Alabama, and was driving a vehicle issued to him by his employer. Doc. 1 at 3.  That vehicle was covered by NHIC under an insurance policy issued to GroSouth. Doc. 1 at 4.  The NHIC policy included both uninsured and UIM coverage. Doc. 1 at 4.  Rhein was insured by Geico Insurance Company, which entered into a settlement with Plaintiff Michelle Stephenson, Gerald Stephenson's wife, and has since tendered its policy limits. Doc. 1 at 4.  NHIC acquiesced to that settlement and waived any subrogation claim. Docs. 1 at 5 & 6 at 4.

Plaintiff Michelle Stephenson commenced this action as the administrator of Gerald Stephenson's estate. Doc. 1 at 2.  She alleges that her damages exceed the available UIM coverage, and that NHIC has breached its contract by failing to tender its UIM policy limits in a timely manner. Docs. 1 at 5 & 22 at 4.  NHIC challenges Stephenson's breach of contract claim, arguing that it is unripe because Rhein's liability and Stephenson's damages

2

have not been established. Doc. 39 at 5.

### III.  STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject matter jurisdiction and takes one of two forms: a facial attack or a factual attack.  A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). When evaluating a facial attack, the court considers the allegations in the plaintiff's complaint as true. *Id.*  "Such protections do not attach when the district court's jurisdictional decision is based upon the court's resolution of disputed facts." *Eaton v. Dorchester Dev. Inc.*, 692 F.2d 727, 731–32 (11th Cir. 1982).  A factual attack challenges the factual allegations underlying the assertion of subject matter jurisdiction. *Lawrence*, 919 F.2d at 1529.  When evaluating a factual attack, there is no presumption in favor of the plaintiff and the court may weigh the evidence and consider "matters outside the pleadings, such as testimony and affidavits." *Id.*  "Under a factual attack, the court may hear conflicting evidence and decide the factual issues that determine jurisdiction." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1257 (M.D. Fla. 2011) (citing *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)).

"Because ripeness pertains to a federal court's subject matter jurisdiction, it is appropriately analyzed under Rule 12(b)(1)." *Graves v. City of Montgomery*, 807 F. Supp. 2d 1096, 1100 (M.D. Ala. 2011).  "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## IV.  DISCUSSION

A plaintiff need not establish liability against a UIM before bringing a claim against her insurance carrier to recover UIM benefits. *Ex parte State Farm Mut. Auto. Ins. Co.*, 893 So. 2d 1111, 1115 (Ala. 2004).  But a breach of contract action is different from a claim for UIM benefits.  "Alabama law holds that such a claim is premature before the fact and extent of the insurer's payment obligation has been satisfactorily established." *Collins v. Nationwide Mut. Ins. Co.*, 2017 WL 1901630, at *1 (S.D. Ala. May 9, 2017).  "Without a determination of whether liability exists on the part of the underinsured motorist and the extent of the plaintiff's damages," a breach of contract claim is not ripe for adjudication. *Id.* (citing *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 564 (2005)).  That is because there can be no breach of a UIM contract unless the insured first proves that she is legally entitled to recover damages under the UIM policy. *Pontius*, 915 So. 2d at 564; *Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983).  To demonstrate that she is legally entitled to recover, a plaintiff must show (1) fault on the part of the UIM, (2) that the fault gives rise to damages, and (3) the extent of those damages. *Collins*, 2017 WL 1901630, at *2.  For the reasons stated below, the court concludes that the extent of Stephenson's damages is not established, making the breach of contract claim unripe.

**A.     Whether Subject Matter Jurisdiction Is at Issue**

As a threshold issue, Stephenson argues that this court would not be divested of subject matter jurisdiction even assuming the UIM's liability and damages are not yet ascertained.  The court does not agree.

4

In *Pontius v. State Farm Mutual Automobile Insurance Company*, 915 So. 2d at 565, the Alabama Supreme Court held that a dismissal without prejudice for lack of subject matter jurisdiction is the appropriate remedy where a complaint presents unripe claims for breach of contract or bad-faith failure to pay. The reason for this is straightforward. "Without a determination of whether liability exists on the part of the underinsured motorist and the extent of the plaintiff's damages, a claim of bad-faith failure to pay or breach of contract is premature." *Id.* at 564.

Similarly, in *Ex parte Safeway Insurance Company of Alabama, Incorporated*, 990 So. 2d 344, 352 (Ala. 2008) ("*Safeway I*"), the Alabama Supreme Court found a breach of contract action to be unripe where the plaintiff's damages from an accident involving a UIM were in dispute. The *Safeway I* plaintiff filed a claim for bad-faith failure to pay UIM benefits against Safeway. *Id.* at 346. Safeway refused to tender the policy limits to the plaintiff after she was hit by an uninsured drunk driver. *Id.* at 348. After she filed suit, Safeway moved to dismiss the plaintiff's claim on ripeness grounds, contending that the medical damages were contested. *Id.* at 348. Safeway submitted evidence demonstrating that certain components of the plaintiff's damages were in dispute because the plaintiff had yet to give Safeway all of her medical records relating to the incident. *Id.* at 347. The Alabama Supreme Court determined that this dispute over the extent of the damages rendered the plaintiff's bad-faith failure to pay claim to be unripe. *Id.* at 352. As a result, the court did not have subject-matter jurisdiction over the claim, which was due for dismissal without prejudice. *Id.*

However, in *Ex parte Safeway Insurance Company of Alabama, Incorporated*, 148 So. 3d 39, 43 (Ala. 2013) ("*Safeway II*"), the Alabama Supreme Court held that a similar

breach of contract claim was not subject to dismissal for ripeness even though liability and damages had not been established. The plaintiff in *Safeway II* was driving on a county road when a deer ran across the street, causing a truck in the southbound lane to swerve into the northbound lane where he was driving. *Id.* at 40. The truck hit the plaintiff's vehicle, causing it to run off the road and into a creek bed. *Id.* Before the plaintiff could learn the truck driver's identity, the driver fled the scene. *Id.* The plaintiff, who had UIM coverage with Safeway, requested the full policy limits, and later filed a breach of contract claim based on Safeway's refusal to comply. *Id.* Safeway moved to dismiss this claim, arguing that it was unripe until the plaintiff established liability and damages. *Id.* at 41. The Alabama Supreme Court held that if the plaintiff "cannot establish the fault of the phantom driver, then he cannot prove bad faith and, accordingly, Safeway may prevail on a Rule 12(b)(6) motion to dismiss." *Id.* at 43. Even so, the court determined that there was "no reason why ripeness and subject-matter jurisdiction must be implicated," and it did not find that the breach of contract claim was unripe for adjudication. *Id.*

Stephenson urges the court to apply *Safeway II* to her case. But the district courts that have analyzed *Safeway I* and *Safeway II* have found that the existence of an unidentified driver in *Safeway II* explains the disparate outcomes in those two cases. The text of the *Safeway II* opinion supports this conclusion, as the Alabama Supreme Court observed in a footnote that a "distinction between the facts in *Pontius* and the facts before us complicates the application of the *Pontius* holding here: The present case allegedly involves a phantom driver, whereas *Pontius* involved a known driver. Decisions following the *Pontius* holding involved known uninsured drivers, not phantom drivers." *Safeway II*, 148 So. 2d at 45 n.2. In *Broadway v. State Farm Mutual Automobile Insurance Company*,

4 F. Supp. 3d 1271, 1279–80 (M.D. Ala. 2014), a district court seized on this distinction. The *Broadway* court noted: "If the Alabama Supreme Court had intended to change the holdings of *Pontius* and *Safeway I* that courts lack subject matter jurisdiction over breach of contract and bad faith claims involving UIM benefits where liability and damages are not established, then the *Safeway II* court would have overruled those cases." *Id.* at 1280. Because *Broadway* involved an identified UIM, the court applied *Safeway I* and analyzed whether its breach of contract and bad faith claims were ripe. *Id.* at 1280–82. Similarly, in *Watts v. Farmers Insurance Exchange*, 2018 WL 1993018, at *8 (N.D. Ala. Apr. 27, 2018), another district court determined that *Safeway I* controlled its outcome because the tortfeasor had been identified. That case involved a car accident where the plaintiff's truck was struck by another vehicle driven by a UIM. *Id.* at *1. Because the UIM was identified, the court analyzed whether the plaintiff's breach of contract claims were premature and whether it had subject matter jurisdiction over the claims, ultimately determining that the claims were unripe because damages had not been established. *Id.* at *10.

In addition to *Safeway II*, Stephenson relies on the Alabama Supreme Court's decision in *Ex parte Nautilus Insurance Company*, 260 So. 3d 823, 832–33 (Ala. 2018), in which the court summarized its decision in *Safeway II* as holding that "an insured's assertion of a bad-faith claim for refusal to pay uninsured-motorist benefits before any adjudication of the UIM's liability and the amount of damages was <u>not</u> a ripeness issue that affected the trial court's subject-matter jurisdiction." However, as Stephenson admits (Doc. 42 at 6), *Nautilus* did not involve an uninsured motorist claim, only claims of fraud and negligence. *Nautilus*, 260 So. 3d at 832. And Nautilus did not overrule *Pontius* or *Safeway I*. As a result, nothing in *Nautilus* erodes the distinction between UIM claims

7

involving known and phantom drivers. Because the instant case involves a known tortfeasor, the court applies the Rule 12(b)(1) standard set out in *Pontius* and *Safeway I*.

**B.     Extent of Damages**

Although Stephenson disputes whether she must establish liability and damages to survive the motion to dismiss, she nevertheless maintains that she has established both liability and the extent of her damages such that the court enjoys subject matter jurisdiction over the breach of contract claim against NHIC. As set out below, however, the court finds that Stephenson's damages are not certain and ascertained, and therefore her breach of contract claim is unripe.

NHIC asserts that its motion to dismiss is a facial attack on Stephenson's complaint. Doc. 39 at 3. The complaint must "plausibly allege that [Stephenson's] damages are certain" for her breach of contract claim to survive a facial attack. *Broadway*, 4 F. Supp. 3d at 1280. It does. Stephenson's complaint mirrors the complaint in *Broadway*, where the plaintiff alleged that he suffered specific injuries from the negligence of the UIM that resulted in injuries in excess of his $25,000 UIM coverage. *Id.* He also alleged that State Farm offered him only $5,000 "knowing that the fair and reasonable settlement value of his claim exceeded" the policy limits. *Id.* Without providing evidence, the UIM carrier claimed that the damages were in dispute. *Id.* at 1281. On these facts, the court concluded that the plaintiff had met his burden because all he had to do was "simply allege that his damages are undisputed, not that his insurer actually *agrees* to the amount in question." *Id.* The court invited the insurance company to mount a factual attack demonstrating that damages were uncertain—for example, by providing incomplete medical records or untreated injuries—but found the plaintiff's allegations to be sufficient at the pleading

stage. *Id.*

Here, Stephenson's complaint also is sufficient to allege that Rhein (and by extension NHIC) is liable for her damages and that her damages are settled. Stephenson alleges that Rhein negligently caused the collision. Doc. 1 at 3. And Stephenson alleges the following with respect to her damages:

> The amount of insurance available under the GEICO policy of insurance was grossly inadequate and is far less than what an Alabama jury will most certainly award for the negligent and wanton conduct of Donald Harry Rhein causing the wrongful death of Gerald W. Stephenson.
>
> The full amount of this insurance policy, including stacking of all available vehicles, plus interest, is due from New Hampshire Insurance Company.
>
> The amount of damages exceeds the amount of available insurance coverages, but Defendants have failed, to date, to pay those limits of insurance.

Doc. 1 at 4 & 5; Doc. 22 at 4.

Like the plaintiff in *Broadway*, Stephenson has alleged that the full amount of her UIM insurance is due and that NHIC has refused to tender it. Stephenson may not have alleged the precise dollar amount of her damages, but she has plausibly alleged that her damages exceed the available coverage, which is the relevant question under the present circumstances. *See Broadway*, 4 F. Supp. 3d at 1280–81 (analyzing damage allegations in relation to policy limits in considering a facial attack); *Collins*, 2017 WL 1901630, at *2 (analyzing proof of damages in relation to policy limits in considering a factual attack). At the pleading stage, it does not matter whether NHIC agrees to the amount of damages Stephenson alleges. *Broadway*, 4 F. Supp. 3d at 1281. Stephenson's allegations that Rhein's negligence caused the collision and that NHIC owes her the full value of the policy because her damages exceed the policy limits adequately establish liability and damages at

the pleading stage. Her allegations are sufficient to survive a facial attack, but this is only the first hurdle Stephenson's breach of contract claim must clear.

Despite NHIC's initial characterization of its motion as a facial attack on jurisdiction, the motion evolved into a factual attack when Stephenson defended it, in part, with the request that the court withhold a determination on the motion until she received responses to her outstanding Requests for Admission. Doc. 42 at 4 n.2. The court obliged by allowing a period for limited discovery (Doc. 44), and Stephenson has now submitted evidence that, she contends, establishes the extent of her damages. The court cannot agree. For the breach of contract claim to survive a factual attack, "there must first be a 'determination,' based on 'proof' (or, presumably, the insurer's agreement or acquiescence), that the uninsured motorist was at fault; that the insured suffered damages as a result; and that the amount of those damages is a particular amount (or, presumably, that it exceeds policy limits)." *Collins*, 2017 WL 1901630, at *2.

Although Stephenson may have plausibly alleged that her damages exceed the policy limits, she has not submitted sufficient proof of this proposition.[2] In fact, Stephenson's last word on this issue is the admission the "only remaining question is to what extent [NHIC] is liable." Doc. 47 at 4. This admission came in the context of Stephenson's argument that this uncertainty does not render her claim moot, which the court rejected above. Regardless of this admission, the court has reviewed Stephenson's evidentiary submission and finds that Stephenson has proven that her husband died in the

---

[2] Because the court finds that Stephenson has not established the extent of her damages when considering NHIC's factual attack on jurisdiction, the court has not reached a determination on her proof of liability. *Watts*, 2018 WL 1993018, at *10.

10

motor vehicle collision that is the subject of this litigation. *See* Doc. 47-1 at 3. But the fact of her husband's death is insufficient to establish the extent of her damages in part due to the unique nature of those damages under Alabama law, which allows only punitive damages to be recovered in a wrongful death case. *E.g.*, *Aetna Cas. & Sur. Co. v. Beggs*, 525 So. 2d 1350, 1352 (Ala. 1988); *see* Doc. 1. at 5 (seeking punitive damages against NHIC). Punitive damages awards are inherently unpredictable. "With only punitive damages recoverable in wrongful death cases . . . it is doubtful that an insured could ever prove the amount of an insurer's liability under uninsured motorist coverage in a wrongful death case with the specificity necessary to recover against an insurer for . . . [failing to] pay a wrongful death claim under uninsured motorist coverage." *Watts*, 2018 WL 1993018, at *10 (internal citations omitted). "The parties can only guess at what a jury would award in the form of punitive damages." *Id.* This unpredictability militates strongly against a finding that Stephenson has established a sum certain in damages.

*Collins*, 2017 WL 1901630, is instructive here. In that case, the plaintiff was injured in a head-on collision with a UIM. *Id.* at *1. The plaintiff brought six claims against its UIM carrier, including a breach of contract claim. *Id.* The plaintiff's primary insurance carrier tendered its policy limits of $100,000 but the plaintiff then demanded the policy limits (an additional $200,000) from the UIM carrier for pain and suffering, mental anguish, and punitive damages. *Id.* at *2. The plaintiff relied on "a demand letter, accident report, supplemental crash reconstruction report, medical records, medical bills and lost wage documentation" in claiming that the tortfeasor's conduct, "combined with the plaintiff's documented medical bills and lost wages, his 'painful injuries' and his emotional distress, support a 'reasonabl[e] infer[ence]' that his 'claimed damages . . . are established

11

damages.'" *Id.* The court noted that the plaintiff had capped his special damages at $36,239.71 and had already received $100,000 from the primary insurer, which therefore included $63,760.29 in general damages. *Id.* The plaintiff demanded an additional $200,000 in UIM coverage, but the court concluded that he "articulate[d] no principled means of concluding that his descriptions of pain and suffering, mental anguish and wanton conduct prove that these elements of his damages exceed $260,000." *Id.* Noting that the unpredictability of punitive damages made the plaintiff's burden particularly difficult to satisfy, the court determined that the plaintiff's complaint did not adequately establish his damages, so his breach of contract claim was unripe. *Id.* at *3.

Similarly, Stephenson has not demonstrated that her damages are established for purposes of subject matter jurisdiction. Stephenson recovered $100,000 from the primary insurance carrier, and she now seeks an additional $1 million from NHIC.[3] But she has not proven that her damages exceed $1.1 million such that NHIC necessarily breached its contract by failing to tender the policy limits. Stephenson turns to a comparison with previous Alabama wrongful death verdicts in an attempt to satisfy this burden, but this comparison carries little weight when factoring in the unpredictability of jury verdicts, particularly those based on punitive damages; the lack of any factual basis for a reliable extrapolation of the previous verdicts; and the wide range of expected outcomes, some of which fall well short of the $1.1 million necessary to implicate NHIC's entire layer of UIM coverage. Doc. 42 at 6 (citing *Tillis Trucking Co. v. Moses*, 748 So. 2d 874, 888 (Ala.

---

[3] The parties have not submitted evidence clearly establishing the amounts of the primary and UIM layers of coverage, but there has been no objection to Stephenson's representation in her briefing that the primary layer is $100,000 or NHIC's representation that the UIM layer is $1,000,000. Docs. 42 at 3 & 43 at 7 n.3.

1999), for the proposition that "wrongful death verdicts typically range between $500,000 and $5,000,000"). Stephenson's evidence does not adequately establish damages for purposes of subject matter jurisdiction.[4] The breach of contract claim against NHIC is due to be dismissed as a result.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that the Partial Motion to Dismiss (Doc. 39) is GRANTED and that Plaintiff's breach of contract claim is DISMISSED without prejudice.

DONE this 18th day of March, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[4] To support her claim that liability and damages are established for purposes of subject matter jurisdiction, Stephenson also provided an Alabama Law Enforcement Agency accident report. Doc. 42-1. NHIC makes a passing reference in its briefing to moving to strike any reference to the accident report as inadmissible hearsay. Doc. 43 at 5. While the report may be relevant to liability, it does not establish the extent of Stephenson's damages or make her alleged damages any more certain. Accordingly, the court did not consider the report in its subject matter jurisdiction analysis, and—to the extent a request buried in a brief can be considered a motion—the motion to strike is DENIED as moot.